UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
JOSEPH MUELLER, individually and on behalf of    :    Civil Action No.:
all others similarly situated,                    :

                                         :    **CLASS ACTION COMPLAINT**

            Plaintiff,              :

                                         :    **JURY TRIAL DEMANDED**

              v.                 :

                                         :

NOWRX, INC., CARY BREESE, SUMEET        :
SHEOKAND, BARRY KARLIN and MARK      :
MARLOW,                                  :

                                         :

            Defendants.
-------------------------------------------------------------------X

## I.    SUMMARY OF THE ACTION

1.    This securities class action is on behalf of the class of all persons and entities who purchased, or otherwise acquired, NowRx Inc. stock ("NowRx" or the "Company") during the period from February 1, 2022 through November 5, 2022 ("C Stock" or "Series C"), inclusive ("Class Period"). The claims asserted herein arise under Section 10b of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b5-a thereunder in connection with the NowRx C Stock sales and offering.

2.    The C Stock shares convertible into shares of Common Stock, were purchased at a price of $10.50 per share in a crowdfunding offering. Defendants made a series of materially false and misleading statements which omitted material facts necessary to make their statements misleading in connection with the sale and purchase of C Stock. The Individual Defendants are named herein as controlling persons of NowRx.

1

3.      NowRx, controlled by the other Defendants, as of April 19, 2022, sold $18.6 million of C Stock to over 6,100 investors[1] through materially misleading information disseminated via online marketing and mass email blasts sent over several months which caused class members to buy tens of millions of dollars of NowRx Series C stock.

4.      Through materially misleading mass email blasts, direct emails, webinars and/or YouTube presentations and SEC filings used during the Class Period to market the Series C Stock. The and misleading statements to investors were concerning the success of the Series C Stock capital raise; growth, expansion, and other attractive financial catalysts of NowRx; that Raymond James had been hired in February 2022 to raise capital or sell the Company but had failed; that the Company assets may be at risk of a "Firesale" for $1.00 that any investment in the Company would be rendered worthless as a result of any such sale; the cash burn rate during 2022; the net capital raised in the Series C offering in 2022.[2]

5.      The Series C offer purportedly closed in late May 2022, and a few months later by October 24, 2022, NowRx had run out of cash, planning its own liquidation in which shareholders would receive nothing.

6.      The materially false and misleading statements omitted the facts that the net income for NowRx during the Class Period was negative and only getting worse every month between January 2022 and May 2022.  For instance, in January 2022, NowRx net income was -$1,711,141.53, February was -$2,002,189.36, March was -$2,046,719.49, April was -$2,424,048.93, and May was -$3,653, 174.69, with the net income loss almost doubling between

---

[1] JD Alois, *NowRx Raising Money on SeedInvest, Will Close Funding Round on May 20th*, Crowdfund Insider, (April 19, 2022), https://www.crowdfundinsider.com/2022/04/190007-nowrx-raising-money-on-seedinvest-will-close-funding-round-on-may-20th/)

[2] Caleb Naysmith, *$27 Million Gone: NowRx Is Latest High-Profile Startup To Hold Firesale As Equity Crowdfunding Favorite Breaks Silence*, Benzinga (December 5, 2022), https://finance.yahoo.com/news/27-million-gone-nowrx-latest-173542842.html

January 2022 and May 2022. Also omitted were the cash burn rates in 2022 of approximately 1.5 million per month and the net capital raised in 2022 after the expenses of marketing the C stock offering.

## II.     JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2) as this is a class action where at least one of the members of the class is a citizen of a State different from any defendant, and the controversy exceeds the sum or value of $5,000,000.

8.     This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1367, and pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa.

9.     This Court has personal jurisdiction and venue is proper here, because Defendants (as defined herein) made the offering of securities to Plaintiff directly from various locations in New York City including 51 Broadway in New York City.

10.     This Court has personal jurisdiction and venue is proper here, because Defendants (as defined herein) made the offering of securities to Plaintiff through NowRx agents from various locations in New York City.

11.     Defendants made sales and solicitations of securities by means and instrumentalities of transportation and/or communications in interstate commerce or the mails.

## III.     PARTIES

12.     Plaintiff Joseph Mueller is a NowRx investor who bought his NowRx C Stock after being sent and relying on numerous solicitations and written communications from NowRx with false and/or misleading information.

**Defendants**

13.    NowRx was a Delaware corporation formed in 2016 and headquartered in Mountainview, California during its operational existence.

14.    On March 8, 2023, NowRx filed for dissolution.

15.    NowRx may be sued herein under Delaware General Corporation Law Section 278 which provides that the legal existence of a dissolved corporation is automatically extended for three years immediately following dissolution and can be sued within three years. If a suit instituted against a dissolved corporation within three years the corporation is deemed to exist indefinitely until the suit's conclusion.

16.    Defendant Cary Breese ("Breese") was the CEO and co-founder of NowRx. As reflected herein, he was the author of many statements made to investors in connection with the sale of Series C.  Breese was one of NowRx's three directors and often acted as secretary for NowRx board meetings.[3]  Under the NowRx bylaws, the person serving as chief executive officer shall also be the acting president of the corporation whenever no other person is then serving in such capacity.

17.    Defendant Sumeet Sheokand ("Sheokand") was the Chief Technology Officer and co-founder of NowRx. He was one of NowRx's three directors.

18.    Barry Karlin ("Karlin") was an investor in NowRx and one of its three directors.

19.    Defendants Breese, Sheokand and Karlin owned at all relevant times 42.42%, 37.3% and 19.94% of NowRx common stock, respectively.

---

[3] *See* NOWRX_SEC220_00000129.  References to documents cited as NOWRX_SEC220_00000001-00000872 correspond to internal books and records produced by NowRx in response to a Demand under Section 220 of Delaware General Corporation Law.

20.    Defendant Mark Marlow ("Marlow") served as the NowRx Chief Financial Officer since January 2022.[4]

21.    Defendants Breese, Karlin, Marlow and Sheokand signed NowRx's Form 1-K for the period ended December 31, 2021 filed on May 2, 2022.

22.    Defendant Breese signed NowRx's semiannual report dated September 28, 2021.

23.    Defendants Breese, Karlin and Sheokand directed and approved NowRx's January 2022 supplement to the offering materials.

## IV.    FACTUAL BACKGROUND

### A.    Introduction

24.    NowRx Inc. was a Delaware corporation headquartered in Mountain View, California.  While it was an active corporation (before November 2022) NowRx described itself as a tech-powered pharmacy that provides same-day prescription delivery and telehealth services. Launched in 2016, with its first location in Mountainview, CA, NowRx's stated mission was to provide consumers free same day prescription delivery.

25.    NowRx purported to have built a proprietary technology platform that it could leverage to create a convenient and safe retail pharmacy service, including a free same-day delivery option for prescription medications. NowRx's stated "intelligent" pharmacy technology, Quickfill, enables two major innovations in the pharmacy industry model: 1) blending of centralized and decentralized processes for optimal application of automation, maximizing both operational efficiency and customer service level ("SLA"); and 2) horizontal integration across all stakeholders: physician, pharmacist, payer and patient, to enhance collaboration throughout the supply chain for better patient experience and health outcome.

---

[4] NOWRX_SEC220_00000691.

26.     A January 20, 2022 press release published by NowRx stated, [a]ccording to NowRx CEO Breese that the Company's purported success was due to its ability to capitalize on several key trends in 2021:

> Much has been written about the role of the pandemic in accelerating the adoption of telehealth services," said Breese. "Patients seeking to avoid infection got used to virtual visits with their doctors. Why would they want to leave the comfort of home to go stand in line to fill a prescription? This naturally led to increased demand for same-day prescription delivery services….The company expects these additions will have a significantly positive impact on revenue and customer acquisition in 2022.

27.     Despite touting revenue projections, this January 20, 2022 press release did not disclose that NowRx's cash burn rate during 2022 was leading to a liquidation in a matter of months and that the net capital raised from the C Stock offering was being increasingly negatively impacted by rising marketing costs while yielding fewer stock sales as 2022 progressed.[5]

28.     By February 2022, Defendants had consulted with an investment bank to run an extensive marketing and sale process to raise external financing even as NowRx was selling its C stock at $10.50 per share.[6] Defendants omitted any disclosure of their own internal valuation.

29.     As of December 31, 2021, NowRx was itself valued by an out investment bank at $3.55 per share. This $3.55 per share price was nowhere near the $10.50 per share price being sold by Defendants. Defendants hid this $3.55 valuation from Plaintiff and class members, never disclosing it in the Form 1-K which NowRx publicly filed on May 2, 2022, or anywhere else.

---

[5] See NRX220SEC0088.

[6] *See* https://www.businesswire.com/news/home/20220120005333/en/NowRx-2021-Momentum-%E2%80%93-in-Revenue-Expanded-Services-and-Service-Areas-Equity-Raises-and-More-%E2%80%93-Makes-It-a-Healthcare-Company-to-Watch-in-2022 (last visited May 5, 2023).

30.     The documentary and circumstantial evidence also proves Defendants knew material adverse information which was never disclosed and which non-disclosure made their statements materially misleading because the December 15, 2021 Minutes of a Regular Meeting of the Board of Directors of NowRx told a materially different and bleaker story of events at NowRx with the Company forecasting a net loss of $9,047,633 for three quarters in 2021 based on $15,568,839 million of revenue versus a net loss of $10.4 million for all of 2020.

**B.       September 2021 Regulation A Series C Stock Offering**

31.     On July 14, 2021, in preparation of the September 2021 C Stock Offering, the Company engaged SeedInvest as its "placement agent" in connection with the Company's offering of securities and to promote, market and solicit investments from individual or retail investors and the public at large for NowRx stock.

32.     On September 30, 2021, NowRx commenced an offering pursuant to SEC Regulation A pursuant to which NowRx offered to sell up to 7,002,801 shares of NowRx Series C Preferred Stock, convertible into shares of Common Stock, at a price of $10.50 per share (the "September 2021 Offering") using an Offering Statement and supplements thereto for the offer and sale of Series C.

33.     NowRx was qualified by the SEC for a Reg A offering and therefore was exempt from registration requirements for its Series C offering. But the SEC did not vet the Final Offering Circular or any other solicitation material used to solicit sales of stock.

34.     SeedInvest acted on behalf of NowRx at all times relevant herein as "placement agent" and "intermediary" for NowRx for the Series C offering to raise capital for NowRx pursuant to written contracts.

7

35.     SeedInvest's marketing and solicitation activities included at least weekly emails to prospective investors including Plaintiffs from NowRx and Defendants, with information about NowRx and the so-called success of the C Stock offer.

36.     On behalf of NowRx, SeedInvest emailed prospective investors 48 times starting on September 13, 2021, and ending on May 20, 2022, or more than an average of once a week over nine months, and more than 17 times in May 2022.  Each SeedInvest email contained information with glowing endorsements provided by Defendants designed to make NowRx stock look undervalued.

37.     The emails sent in 2021 were dated September 13, 21, 24, 28, 2021; October 5, 10, 18, 28, 23, 2021; December 11, 18, 2021.

38.     The relentless promotion and solicitation of sales of NowRx stock continued through 2022 with emails announcing in headlines NowRx's success in raising capital including emails on January 20, 2022; February 3, 2022; April 11 and 19, 2022; and May 1, 8, 11, 13, 14, 15, 17, 19, and 20 of 2022.

39.     Each of the solicitations mentioned  the SEC – "qualified" Offering Statement and Financial Offering Circular, but did not disclose that the Offering Statement had stale financial information. At the very end of the multipage email, in much smaller type than the body of the email, there was provided a link to the Offering Statement. The Offering Statement, however, contained financial statements only through June 30, 2021 and those were unaudited. While the Offering Statement contained a going concern warning, Plaintiff and class members could reasonably believe that the so-called success of the C Stock offering had eliminated the going concern risk.

40.     Even if investors read the "going concern" footnote in NowRx's December 31, 2020 audited financial statements they would have been informed only that:

> The Company's ability to continue as a going concern in the next twelve months following the date the consolidated financial statements were available to be issued is dependent upon its ability to produce revenues and/or obtain financing sufficient to meet current and future obligations and deploy such to produce profitable operating results.

41.     This statement was materially misleading because it failed to disclose that during 2021 and 2022 NowRx had not raised, nor could it raise enough capital to fund its operations for more than a few more months nor did it mention NowRx's other failed efforts to raise capital and to attract offers for the Company.

42.     In or around May 2022, NowRx announced that it had again broken an [e]quity Crowdfunding record on SeedInvest with four days left in its solicitation of sales of NowRx equity campaign when it stated, "its current Series C equity crowdfunding round on SeedInvest, the leading equity crowdfunding platform, "surpassed $22.5M, making it the largest Regulation A investment in SeedInvest history."[7]

43.     In May 2022, SeedInvest forwarded prospective investors an email from Defendant Breese, proclaiming, *inter alia*, "this a great investment" And touting the C stock offering fundraising.  This email was false and misleading because NowRx and/or SeedInvest knew or should have known at that time that the approximately 30% of Series C capital raise had been spent on advertising, in addition to the 8.5% commission to SeedInvest and thus the amount of capital actually available to SeedInvest from the offering was only slightly more than 50% of what was represented to Plaintiff and investors and would not provide enough capital for more than a few months after June 2022.

---

[7] *See* https://www.businesswire.com/news/home/20220516005276/en/NowRx-Breaks-Equity-Crowdfunding-Record-on-SeedInvest-With-Four-Days-Left-in-Campaign.

### 1.    NowRx Solicitation Emails

44.    On November 15, 2021, 2:04 p.m., SeedInvest sent Plaintiff and class members an email that included a message from Defendant Breese, who stated that with their "plans to expand to several new territories alongside potential new growth opportunities in specialty and mail order medication, we believe the future looks extremely bright in 2022."

45.    On January 27, 2022, at 4:15 p.m., SeedInvest sent Plaintiff and class members an email that stated the Company "reported two consecutive months or record-breaking revenue in November and December 2021, [that] explains NowRx's plans for nationwide expansion."

46.    Similarly, on February 10, 2022, SeedInvest sent another email with a message from the newly acquired CFO, of NowRx, Defendant Mark Marlow who stated "NowRx is growing quickly" and "[was] out in front of the competition."

47.    On March 1, 2022, 4:09 p.m., SeedInvest sent an email quoting Defendant Breese, who stated, "the popularity of our newest telehealth service demonstrates NowRx's ability to expand beyond just prescription delivery" and "we believe this offers another incredible channel to scale revenue in the growing $61B_U.S. telehealth market."

48.    Per an email on April 21, 2022, 1:56 p.m., SeedInvest stated "NowRx has continued to see strong traction in 2022, with four facilities announced, record-breaking revenue, and strategic hires … helping position the company for growth."

49.    Despite this constant touting of Company growth, record-breaking revenue, and expansion into a lucrative market, Defendants failed to disclose or warn that NowRx's recent financial condition was materially worse than the stale financials in the Offering Circular reflected.

50.     Defendants failed to disclose that NowRx's percentage net proceeds of Series C, net of "Monthly Ad Spread" was steadily declining from 80% at the end of February 2022 to 69% by the end of May 2023.

51.     In fact, despite touting the success of the offering, NowRx spent $867,500 on "Ad Spread" in March but raised only $1,438,250. In April, the spend was $1,419,000 and the raise was $1,078,896; in May the spend was $2,839,000 and the raise was $3,390,000.

52.     The Offering Statements available by links on SeedInvest emails would not have cured or ameliorated the misleading effects of the NowRx information because the linked Offering Statements were stale since they only contained a financial statement as of June 30, 2021.

### C.     The Offering Circular Misrepresentations

53.     NowRx issued its "Offering Circular" dated September 29, 2021 and a supplement thereto dated January 21, 2022 (collectively "Offering Circular"). The Offering Circular was filed with the SEC and was sometimes accessible via a link in some of SeedInvest's email blasts to its crowd funded investors.

54.     The offering was for 'UP TO 7,002,801 SHARES OF PREFERRED STOCK" with a "minimum" of 238,095 shares.

55.     In the "Use of Proceeds" statement at page 3, it stated:

Use Of Proceeds:

The net proceeds of the offering will be used to increase our research and development in pharmacy automation technology, accelerate our growth into new geographical regions and markets and expand operations to meet increasing consumer demand.

11

This statement was materially false and misleading because it led investors to believe that the "net" was only net of the 8.5% commissions when in a reality the true net proceed were about 30% lower due to "Ad Spreading" to generate sales of C stock.

56.    In a more comprehensive "Use of Proceeds" section at pages 14-15 of the Offering Circular, it provided more detail about the use of proceeds and allocation of proceeds to things like "pharmacy operations and support," general administrative expenses of "employee compensation," "legal, and office expenses" and "sales and marketing." The Use of Proceeds in the September Offering Circular contained details on pages 14-15 about marketing expenses based upon various levels of the C stock offering size. For each offering scenario illustrated, the "sale and marketing" estimate was over 25% of the allocation of proceeds where the estimated offering size was between greater than $18.75 million up to the maximum net proceeds of $67.8 million. While the Offering Circular section Managements Discussion And Analysis" ("MDA") disclosed that "sales and marketing" expenses included marketing costs for the sales of Series A securities, it made no disclosure of any estimate of marketing expenses to solicit sales of the C stock through SeedInvest. The estimates were stale and materially misleading by February 2022 because SeedInvest knew, or should have known that the Ad Spreading to spur sales of C stock were increasing every month but were yielding diminishing results of C stock sold. An ordinary investor could not piece together from the Offering Circular that NowRx spent approximately $2,041,872 on marketing to solicit Series A stock sale while generating $18.75 million of net proceeds, a bit over 10% of the net proceeds in early stages (up to December 31, 2021) of the C stock offering which were ballooning upward through 2022.

57.    In the "Liquidity and Capital Resources" section of the MDA (pages 31-32), NowRx informed investors: "As we have done historically, we may again in the future elect to

finance operations by selling equity to finance operations by selling equity or debt securities or borrowing money" and went on to state: "If we are unable to raise additional capital or generate sufficient cash from operations to adequately fund our operations, we will need to curtail planned activities to reduce costs." *Id.* "Doing so will likely have an unfavorable effect on our ability to execute on our business plan, and have an adverse effect on our business results of operations and future prospects." *Id*.

58.     The Offering Circular revealed that after the minimum offering amount has been met, "the company may close on investments on a "rolling basis. . ." *Id*. at 47.

59.     The Offering Statement included audited financial statements as of December 31, 2020 and unaudited six months financial statements ended June 30, 2021. *Id*. at page 50. The Supplemental Offering Circular did not include any new financial statements after June 21, 2021 even though unaudited six months and one year results as of December 31, 2021 were available when the Supplement issued. This information vacuum allowed Plaintiff and other class members to be misled by SeedInvest's materially false and misleading solicitations.

60.     The January 21, 2022 Supplement addressed only two sections: "Directors Executive Officers and Significant Employees" and "Security Ownership of Management And Certain Shareholders." There was no update to any financial condition or status of NowRx as a going concern, nor was there any disclosure of the progress of the C stock offering.

61.     Internally, at NowRx, the Company's financial condition and its capital raising as detailed in its December 15, 2021 Minutes of a Regular Meeting of the Board of Directors of NowRx, Inc. and information in the "Board Meeting 12-15-2021" told a materially different and bleaker story of events at NowRx. *See* NowRx-SEC-220 0000005-19.

62.     Moreover, the Offering Circular and Supplement omitted any reference to the recent valuation of its stock commissioned by NowRx for internal use which showed a per share value of less than $5.00 per C Stock which was less than half the price of $10.00 paid by all class members.

63.     Concealed from stock purchasers in 2022 was the fact that the Company forecast net loss of $9,047,633 million for three quarters 2021 based on $15,568,839 million of revenue versus a net loss of 10.4 million for all of 2020.

64.     The Company internally showed that "Total Equity" had gone from $3,043,316 as of June 30, 2021 to negative 41,454 as of September 30, 2020 which was not publicly disclosed.

**D.      May 2022 Solicitations – "Last Call" for NowRx Stock**

65.     In or around May 2022, SeedInvest, on behalf of NowRx, took their marketing efforts to new heights with a flurry of, almost daily, email solicitations to Plaintiff and other prospective investors with  misleading statements designed to induce investment in NowRx when Defendants knew or should have known it would soon declare bankruptcy or require a fire sale in the next few months, effectively rendering any investment worthless.

66.     On May 15, 2022, 12:54 p.m., SeedInvest emailed Plaintiff and other prospective investors directly stating, among other things, "the company has grown its share price by over 1,650% since 2016." The information was provided by Defendants and was materially misleading because it omitted any reference to the valuation of C Stock previously described herein.

67.     Per a May 17, 2022 email from Defendant Breese to plaintiff and other prospective investors:

> NowRx is now the #1 campaign in SeedInvest platform history with over $23M raised from over 7,900 investors and that would not be possible without the

incredible backing of our existing and potential future investors!  As we approach the **final 3 days** of what could very well be our last equity crowdfunding round, I'd like to pause and reflect on some of the amazing highlights we have been able to achieve with the help of the crowd over the last 5 years. Since 2016, NowRx has been able to grow revenue from just under **$700,000** to an annual run rate of **over $32M** while expanding to **8** operational locations with **5** more set to open in the next few months.  In addition, we've seen our share price value increase by over **1,600%** for shareholders during that time while earning major industry awards and partnerships such as the 2021 Surescripts White Coat Award and our recently announced partnership with Hyundai Motor Group.

But even beyond these stats is the impact that NowRx is continuing to make on the American pharmacy system – something we believe makes this a great investment.

68.     On or about May 15, 2022, Defendant Breese held a webinar and posted that webinar to YouTube titled "How To Make Money Investing In NowRx Webinar."[8] SeedInvest forwarded the link to the webinar to Plaintiff and class members.

69.     In reliance on these representations directly made to them Plaintiff and class members purchased NowRx stock.

70.     Despite these May 2022 solicitations and urgent requests to buy NowRx stock before the offering was fully subscribed or closed, NowRx continued to sell stock past the May 20, 2022 closing and it was later confirmed in NowRx's SEC filings that the offering did not close until September 2022.

71.     These May 2022 solicitations gave no indication to Plaintiff or class members that for April and May 2022, NowRx monthly spend to solicit and sell shares of C stock was almost as much as the capital raise for those months.

**E.      September 2021 Offering Purportedly Closes**

72.     As of June 30, 2022, the Company issued 2,908,071 shares of Series C Preferred Stock in the September 2021 Offering, which provided NowRx after total offering costs and

---

[8] See https://www.youtube.com/watch?v=HFqRyeqSqa8

commissions and spending with approximately $19 million rather than the "net proceeds of $26,658,186" publicly reported.

73.    Per the Company's Form 1-SA or the fiscal semiannual period ended June 30, 2022 and filed September 28, 2022, the September 2021 Offering terminated on September 30, 2022.

### F.    The Quiet Wind Down Scenario

74.    On November 18, 2022, only two months after September 2021 Offering terminated in September 2022, the Company held a board meeting in which directors Cary Breese, Sumeet Sheokand, and Barry Karlin met for "a discussion regarding the Company's business, using the Board Meeting Packet, attached here as Exhibit A, to guide and inform the discussion."[9]

75.    The purpose of the meeting was to consider certain wind-down options including:[10]

1.    Chapter 11 Liquidation

2.    Chapter 7 Liquidation

3.    Assignment for the Benefit of Creditors

4.    UCC Foreclosure

5.    Quiet Wind-Down and State Law Dissolution

76.    "At the end of the meeting, Mr. Breese presented the board with the following corporate items to be approved by the Board. Upon motion duly made and seconded, the Board approved the following actions and accompanying resolutions:

---

[9] *See* NRX220SEC0082.

[10] *See* NRX220SEC0089.

**Approval to "Execute on The Quiet Wind Down Scenario, target date: 11/30/2022"[11]**

77.    Notably, the Exhibit A attached to the November 18, 2022 meeting minutes confirmed NowRx and its officers and directors knew or should have known of an impending collapse and stated:

> ● **Since February 2022, NowRx ("NowRx" or the "Company") has run an extensive marketing and sale process led by Raymond James to raise external financing or otherwise sell the Company as a going concern.[12]**

78.    The presentation page stated in full:

## SITUATIONAL OVERVIEW



- Since February 2022, NowRx ("NowRx" or the "Company") has run an extensive marketing and sale process led by Raymond James to raise external financing or otherwise sell the Company as a going concern.
- Unfortunately, this process—while extensive—has not resulted in any bids that would allow the Company to continue operating in the normal course.
- The Company has already taken significant steps to reduce its footprint and corresponding employee count in order to reduce costs.
- Based upon the latest cash flow forecasts, the Company expects to run out of cash on or around December 30, 2022.
- Decathlon, as senior secured creditor, has shown a willingness to allow the Company to sell off its remaining assets and wind down responsibly.

2  CONFIDENTIAL  nrxe.com                                    NRX220SEC0088

**G.    Loss Causation Truth Is Revealed – NowRx Investors Lose Their Investment**

79.    On November 30, 2022, the "The Quiet Wind Down Scenario" went public when NowRx dropped a bomb on investors stating, among other things, "we are reaching out today to

---

[11] *Id.*

[12] See NRX220SEC0088.

inform you that NowRx has reached an agreement with Alto Pharmacy to acquire the business (California prescription files, etc.) effective immediately.  Beginning December 2, 2022, Alto Pharmacy will provide all prescription delivery and services to NowRx patients, ensuring the continuity of high-quality service that NowRx customers have come to expect." A November 30, 2022 Bill of Sale and Asset Purchase Agreement between Grand Canyon Acquisition Company and NowRx listed the sale for $1.00.

80.     Effective December 1, 2022, Capsule acquired patient files for NowRx's Arizona business.

81.     On December 5, 2022, online publisher Benzinga reported "$27 Million Gone: NowRx Is Latest High-Profile Startup To Hold Firesale As Equity Crowdfunding Favorite Breaks Silence.[13]

82.     On January 19, 2023, NowRx solicited investors "seeking your approval to authorize 1) the sale of the Company's remaining assets, and the filing of final corporate dissolution under Delaware corporate law, as outlined in the below linked Stockholder Consent In addition, we are providing further details regarding the recent sale of its patient business, the status of ongoing asset sales, and highlights of recent events that led to these circumstances. As per your Subscription Agreement with NowRx and related documents associated with your investment, your vote is required in connection with this requested approval."

83.     Unbeknownst to investors, NowRx was engaged in overly aggressive patient acquisition and growth strategies that placed the Company at heightened and significant risk of insolvency given the cash spend needed to fund these strategies and had no commitments in

---

[13] Caleb Naysmith, *$27 Million Gone: NowRx Is Latest High-Profile Startup To Hold Firesale As Equity Crowdfunding Favorite Breaks Silence,* Benzinga, (December 5, 2022) https://www.benzinga.com/news/22/12/29960953/27-million-gone-nowrx-is-latest-high-profile-startup-to-hold-firesale-as-equity-crowdfunding-favorit.

place to fund these strategies with their cash reserves in short supply and on the brink of exhaustion.

84.     The truth is that NowRx knew or should have known it could not raise enough capital to continue operations position long before it offered the Series C and before it solicited investments from Plaintiff and class members in May 2022.[14]

85.     The financial information available to investors at the time of the Series C Stocks solicitations was based on financial statements from 2020.  And NowRx had a monthly cash burn rate of at least, $1.5 million in 2021 and 2022.[15]

86.     During the raise itself, NowRx took advantage of standard bi-weekly closings — where capital from committed investors is transferred from the individuals to the Company to fund its current operations. It also had to pay for raise-related fees and marketing along the way.[16]

87.     NowRx also engaged investment bank "Raymond James to raise external financing or otherwise sell the Company as a going concern" in or before February 2022 and that NowRx officers and directors knew or should have known that the "Company expects to run out of cash on or around December 30, 2022" in or before May 2022.[17]

88.     The  Company failed to make express supplemental disclosures regarding the financial results of NowRx through December 31, 2021, then through March 31, 2022 and disclose that the ad spend was eating into the capital raise at an average rate of 30% plus 85%

---

[14] *See* https://kingscrowd.com/nowrx-is-shutting-down/#:~:text=It%20was%20an%20exciting%20company,to%20NowRx's%20patients%20in%20California.

[15] *Id.*

[16] *Id.*

[17] *See* **NOWRX_SEC220_00000341**.

commission to SeedInvest, the Raymond James engagement, its likelihood or possibility to run out of cash by December 31, 2022, or its dependence to survive on a commitment from an outside lender or investor for another significant investment to stay solvent after December 31, 2022.

89.    Despite this actual or constructive knowledge of the fact that Raymond James had been running an extensive marketing and sale process to raise external financing or otherwise sell the Company since February 2022, NowRx and SeedInvest continued to solicit purchases from investors by misleading investors and giving a false sense of security in their investment and the Company's raise capital and to fund operations to operate with the avalanche of self-serving, half-truth emails they sent, almost daily, in May 2022.

90.    Unsuspecting and uninformed investors were stunned when NowRx, abruptly closed doors a few months later in November 2022 without warning or explanation with many taking to social media for answers:





21



33Capital @nick_petek · 21h

@SeedInvest Have you received any updates from @NowRx? A lot of the investors on your platform are wondering what's going on and what the status of our investments in NowRx are.



NowRX Investors



Write an answer...

**Wade J Golab**
I definitely feel like we were intentionally mislead in the last round, especially during the webinars they held and all the announcements of new locations opening that never did. They sure said all the right things. I'm not sure if it was illegal or not though. Even if we could sue... all the money is gone.

Like    Reply    Share    1w

View more answers

## Any information on recent sale to Alto?

I'm an investor from their Series C and B raises, and we have zero information yet on the transaction. Any information would be greatly appreciated!

⬆ 6 ⬇    💬 22    ⬆ Share

Sort by:   👤 Best ⌄ ────────────────────────────────────────────  22 comments

＋ Add a Comment

**DOLPinelandU** · 6 mo. ago

Im an investor too. This smells bad. At first glance it appears the company has been gutted (assets sold) but no word, no email, no press release from CEO to the $75 million worth of investors. I don't like this one bit.

⊖    ⬆ 10 ⬇    💬 Reply    ⬆ Share    ⋯

    **zf0811** 🎤 · 6 mo. ago

    Did you try to reach out to seedinvest for clarification? I tried to, they said they'll check with the company management, but then never got back to me. My shares are supposed to be handled by Vstock as transfer agent but i still didn'g hear from them as well about the status of those shares..

    ⬆ 5 ⬇    💬 Reply    ⬆ Share    ⋯

    ⊕ 1 more reply

**Positive_Humor6481** · 4 mo. ago

Money lost never coming back

⬆ 3 ⬇    💬 Reply    ⬆ Share    ⋯

 **r/NowRx**
by bigpoppamax · 2 mo. ago



# SeedInvest is a Scam

In my opinion, they're nothing more than a marketing company or "hype man" for startups looking to raise funds. They charged NowRx millions of dollars to run around town saying that NowRx is a hugely successful company with a promising future. They misled investors, intentionally or unintentionally, by not doing a reasonable degree of due diligence. They cherrypicked stats about NowRx that would look good in a press release, while ignoring more meaningful data that the NowRx CFO and CEO were undoubtedly doing their best to hide from the world. What vetting did SeedInvest do on behalf of their investor community? Were they completely asleep at the wheel? SeedInvest handed NowRx $20 million from investors in their community, and then NowRx went bankrupt six months later. It's a joke. Clearly the fundraising wasn't to accelerate growth, it was to hold off bankruptcy for a couple months. NowRx wasn't a successful company, it was a walking corpse and NowRx acted like it was a rocketship. I feel like there should be a class-action lawsuit against both NowRx and SeedInvest for misleading investors. The second fundraising campaign was just a cash-grab, and SeedInvest doesn't care about the damage to investors because at the end of the day, the SeedInvest CEO and the NowRx CEO got paid. That's how America works. The people at the top live a life of luxury while destroying the savings of everyone around them. When the house of cards collapses, the CEOs don't face accountability. They just move on to their next grift.

91.     Since making their investments, NowRx class members have made multiple inquiries to understand the Company's sudden collapse in light of the 2022 solicitations, as well as the sources and uses of their investments and any stock sales by Defendants.

## V.     CLASS ACTION ALLEGATIONS

92.     Plaintiff brings this action as a class action on behalf of a class consisting of all persons or entities who purchased or otherwise acquired NowRx stock from February 2021 through November 2022, including but not limited to the Offering Documents issued in connection with the September 2021 Offering, and who were damaged thereby (the "Class"). Excluded from the Class: the Defendants and the Individual Defendants' immediate family members; the officers, directors, and affiliates of NowRx, the Selling Stockholder Defendants and the Underwriter Defendants at all relevant times, including NowRx's employee retirement and/or benefit plan(s) and their participants and/or beneficiaries to the extent that they purchased or acquired NowRx common stock shares through any such plan(s); any entity in which a Defendant has or had a controlling interest; and the legal representatives, heirs, successors or assigns of any excluded person or entity.

93.     The members of the Class are so numerous that joinder of all members is impracticable. The exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery. Plaintiff believes that there are hundreds or thousands of members in the proposed Class.

94.     Record owners and other members of the Class may be identified from records maintained by NowRx or SeedInvest, and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

95.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that complained of herein.

96.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

97.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are: (a) Whether Defendants violated the Securities Exchange Act; (b) Whether the Solicitation Documents were negligently prepared and contained inaccurate statements of material fact or omitted material information required to be stated therein; and (c) To what extent the members of the Class have sustained damages and the proper measure of damages.

98.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I

### Violation of §10b-5 of the Securities Exchange Act Against All Defendants

99.     Plaintiff repeats and realleges each and every allegation as if more fully set forth herein.

100.    This Count is brought under Section 10b of the Securities Exchange Act, 15 U.S.C. §78f(b).

101.    The statements were inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

102.    None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Solicitations Materials were true and without omissions of material facts and were not misleading. By virtue of each of defendants' failure to exercise reasonable care, the solicitation materials contained misrepresentations of material facts and omissions of material facts necessary to make the statements therein misleading.

103.    None of the untrue statements or omissions of material facts in the solicitation materials alleged herein were forward-looking statements. Rather, each such statement or omission concerned existing facts. Moreover, the solicitation materials did not properly identify any of the alleged false or misleading statements as forward-looking statements and did not disclose information that undermined the putative validity of those statements.

104.    Plaintiff Joseph Mueller and/or members of the Class acquired NowRx's Series C stock in the September 2021 Solicitation in which shares were offered and/or sold pursuant to the above-described Offering Materials. At the time of their purchases, Joseph Mueller and members of the Class were without knowledge of the facts concerning the omissions alleged herein and could not have reasonably discovered those facts prior to the disclosures herein, especially given the unrelenting promotional materials they received directly from the Defendants.

105. By reason of the conduct herein alleged, Defendants each violated § 10b-5 of the Securities Exchange Act.

## COUNT II

### For Control Person Liability Under Section 20 Against The Individual Defendants

106. Plaintiff repeats and realleges each and every allegation as if more fully set forth herein.

107. Individual Defendants were culpable and controlling persons in Defendant NowRx violations of Section 10b of the Securities Exchange Act.

108. As alleged above, the written materials contained untrue statements of material fact, omitted to state other facts necessary to make the statements made therein not misleading, and omitted to state material facts required to be stated therein.

109. Defendants owed to acquirers of NowRx securities, including Plaintiff and the other Class members, the duty to make a reasonable and diligent investigation of the statements contained in solicitation and sales materials and related documents to ensure that such statements were accurate and that they did not contain any misstatement or omission of material fact.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury of all issues in its Complaint so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A. Determining that this action is a proper class action, certifying Plaintiff as a Class Representative, and appointing Squitieri Fearon LLP and Moore Law PLLC as Class Counsel;

B. Awarding compensatory damages of at least $25 million in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees, accountants' fees, and expert fees, and other costs and disbursements; and

D.      Awarding Plaintiff and the Class such other relief including equitable and/or injunctive relief as the Court may deem just and proper.

Dated: New York, New York        Respectfully submitted,
       November 4, 2025
                                 **SQUITIERI & FEARON, LLP**


                                 */s/ Lee Squitieri*
                                        Lee Squitieri
                                 205 Hudson Street, 7th Floor
                                 New York, New York 10013
                                 Telephone: (212) 421-6492
                                 Facsimile: (212) 421-6553
                                 Email: lee@sfclasslaw.com

                                 **MOORE LAW, PLLC**
                                 Fletcher Moore
                                 30 Wall Street, 8th Floor
                                 New York, New York 10005
                                 Telephone: (212) 709-8245
                                 Facsimile: (917) 634-3035
                                 Email: fletcher@fmoorelaw.com

                                 ***Attorneys For Plaintiff***

28